1. Professional liability coverage is required in the event the hotel employs or contracts with services including, but not limited to, barbers, medical doctors, nurses, masseuse, personal trainers, etc.
2. Shall be evidenced by Acord 25 form (Certificate of Insurance), signed by authorized agent
3. Coverage must be occurrence basis (or, if approved by MLC insurance consultant, on a claims made basis with tail, nose and retroactive coverages approved by MLC insurance consultant)
4. Policy limit shall be no less than $1,000,000 per claim and in the aggregate. Additional coverage amounts shall be required at the discretion of MLC's insurance consultant.

### BUILDER'S RISK
### (APPLICABLE TO ALL PROPERTIES
### DURING PERIODS OF SUBSTANTIAL REPAIR, RESTORATION,
### CONSTRUCTION OR VACANCY)

1. Coverage shall be evidenced by Acord 28 form (Evidence of Insurance), signed by authorized agent. Acord must evidence compliance with these insurance requirements.
2. Must be an all risk/special perils coverage form (including, without limitation, fire and extended coverage and collapse of the improvements)
3. Must provide for no coinsurance, or must provide agreed amount endorsement to suspend the application of any coinsurance provision. If coinsurance is suspended via agreed amount endorsement, agreed amount must be annually reevaluated and approved by MLC insurance consultant.
4. Must reflect building coverage greater than or equal to completed value as valued by MLC (if blanket limit or loss limit is indicated on the policy, declared building value must be shown on the evidence of insurance). Renewal amount shall be adjusted by Borrower, subject to MLC insurance consultant's approval, to maintain proper insurable values.
5. **For all locations in first tier coastal counties in North Carolina, South Carolina, Georgia, Alabama, Mississippi, Louisiana, Texas, Hawaii and the entire state of Florida:** Must provide windstorm/hail coverage. Coverage amounts shall be equal to the building replacement value, with deductibles of up to 5% of the replacement value at each location.
6. **For properties in FEMA flood zones A, B, V, and X-Shaded:** Must provide flood coverage in the maximum amount available under FEMA's flood insurance plans. MLC may require additional flood coverage beyond the FEMA amounts in its discretion.
7. **For properties located in Seismic Zones 3 and 4:** Must provide earthquake coverage, if applicable. Coverage amounts shall be equal to fifty percent (50%) of the building replacement value, with deductibles of up to 5% of the coverage amount at each location. MLC may require higher earthquake coverage in its discretion.
8. Must provide for insurer's waiver of subrogation as to any insured claim for which insured has waived the right of recovery prior to the loss (including for claims against tenants of the property) [this requirement not applicable if landlord and tenant are affiliated and insured under the same casualty policy].
9. Must provide for no terrorism exclusion unless approved by MLC insurance consultant.
10. MLC shall be included as Mortgagee and Lenders Loss Payee and Additional Interest.

E-4

<u>CERTIFICATE HOLDER AND ENTITY TO BE SHOWN ON REQUIRED ENDORSEMENTS</u>:

Merrill Lynch Capital,
a Division of Merrill Lynch Business Financial Services Inc.,
and its successors and assigns
c/o AON Risk Services
1000 N. Milwaukee Avenue
Glenview, IL 60025
Attn: MLC Real Estate

**EXHIBIT F**

Environmental Documents

1. Phase I Environmental Assessment dated August 2006 by S&EC.

2. Addendum to an August 2006 Phase I Environmental Assessment dated September 2006 by S&EC.

3. Addendum to an August 2006 Phase I Environmental Assessment to Incorporate 3.5 Acres dated November 2006 by S&EC.

4. Desk Review of Environmental Report dated December 26, 2006 by LandAmerica Assessment Corporation.

BOI 15806693.8 / 37050-000001

## EXHIBIT G

Litigation

None.

BOI 15806693.8 / 37050-000001

## EXHIBIT H

Government Approvals

(to be completed by Borrower prior to release of any portion of the Holdback)

BOI 15806693.8 / 37050-000001

## EXHIBIT I

Members of Borrower

Gemini Opportunity Fund I, LLC
Gemini Real Estate Advisors, LLC
Gemini Youngsville Crossing Manager, LLC

BO1 15806693.8 / 37050-000001

## EXHIBIT J

Members of Managing Member

Gemini Real Estate Advisors, LLC
Pamela K. Farkas, Independent Manager

## EXHIBIT K

Form of SNDA

THIS INSTRUMENT PREPARED BY AND
AFTER RECORDING RETURN TO:

_____
_____
_____

## SUBORDINATION, ATTORNMENT AND
## NON-DISTURBANCE AGREEMENT

THIS   SUBORDINATION,   ATTORNMENT   AND   NON-DISTURBANCE
AGREEMENT (this "Agreement"), dated this ____ day of _____, 200__, between
_____, a _____ _____ ("Tenant"),
and MERRILL LYNCH CAPITAL, a Division of Merrill Lynch Business Financial Services
Inc., a Delaware corporation, its successors and assigns ("Lender"), having its principal place of
business at 222 North LaSalle Street, 16th Floor, Attention: Merrill Lynch Capital, Real Estate
Finance, Chicago, Illinois 60601.

R E C I T A L S :

A.   Tenant is the lessee under that certain lease executed between Tenant and
_____, a _____ ("[Prior  Landlord][Landlord]"), dated
_____, 200__ (the lease and all amendments thereto are hereinafter referred to as
the "Lease"), covering all or a portion of property with a property address of
_____ and legally described in Schedule A attached hereto
and made a part hereof (the "Property").

B.   [Prior Landlord will transfer the Property and Prior Landlord's interests in the
Lease to _____ ("Landlord").] OR [_____ ("Landlord") is the
successor or assignee to Prior Landlord's interest in the Property.] Lender is making a loan
(the "Loan") to Landlord which is secured, in part, by the lien of a mortgage or deed of trust
executed and delivered by Landlord to Lender encumbering the Property (the "Mortgage") and an
assignment of all leases of and rents from the Property.

C.   As a condition to making the Loan, Lender requires that Tenant enter into this
Agreement.

NOW, THEREFORE, in consideration of the covenants contained herein and other good
and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the
parties agree as follows:

K-1

1.   Tenant hereby represents, acknowledges and agrees as follows:

(a)   The Lease has not been amended, modified or extended, except as follows:

_____

_____

(b)   The Lease does not contain any options to purchase and/or lease additional space, rights of first refusal to purchase and/or lease additional space or any similar provisions regarding acquisition of ownership interests or additional leased space in the building, except as follows:

_____

_____

(c)   The term of the Lease commenced on _____ and will terminate on _____.

(d)   The current monthly rent payment under the Lease is $_____. Rent has been paid through _____. The security deposit currently held pursuant to the Lease is $_____. No advance rents have been prepaid except for the current month.

(e)   In addition to monthly rent payments, the following amounts are also payable on a _____ basis for the following purposes: _____.

(f)   The improvements described in the Lease have been completed and accepted by Tenant.

(g)   Tenant has not sublet any portion of the leased premises or assigned any of its rights under the Lease.

(h)   The Lease is in full force and effect, Tenant has no existing claims, defenses or offsets under the Lease against Landlord, no uncured default exists under the Lease, and no event has occurred that would, except for the lapse of time, the giving of notice or both, constitute a default.

(i)   No cancellation, modification, amendment, extension, or assignment of the Lease, and no subletting or prepayment of more than one month's rent shall be made without Lender's prior written consent.

(j)   All rent payments shall be paid as provided under the Lease until Tenant has been otherwise notified by Lender or its successors and assigns. All prepayments of more than one month's rent and any and all termination fees paid by Tenant, or at Tenant's direction, shall be payable jointly to Lender and Landlord.

(k)   The guaranty of the Lease, if any, is in full force and effect.

K-2

(l)    Tenant will deliver to Lender a copy of all notices Tenant delivers to or receives from Landlord.

(m)    Tenant will not look to Lender or its successors or assigns for the return of the security deposit, if any, under the Lease, except to the extent that such funds are delivered to Lender.

2.    The Lease and all terms thereof, including, without limitation, any options to purchase, rights of first refusal, and any similar rights, are and shall be subject and subordinate to the Mortgage, and to all amendments, modifications, replacements and extensions thereof, to the full extent of the principal, interest, fees, expenses and all other amounts secured thereby.

3.    In the event Lender elects to foreclose the Mortgage, Lender will not join Tenant in summary or foreclosure proceedings unless required by applicable law (and then only to the extent so required) as long as Tenant has not amended the Lease without Lender's prior written consent and is not in default under the Lease.

4.    In the event that Lender shall succeed to the interest of Landlord under the Lease and there exists no default by Tenant under the Lease and Tenant has not amended the Lease without Lender's prior written consent, Lender agrees not to disturb or otherwise interfere with Tenant's possession of the leased premises for the unexpired term of the Lease, provided that Lender shall not be:

(a)    liable for any act or omission of Landlord or any prior landlord under the Lease;

(b)    subject to any offsets or defenses which Tenant might have against Landlord or any prior landlord;

(c)    bound by any rent or additional rent which Tenant might have paid for more than the current month to Landlord or any prior landlord;

(d)    bound by any amendment or modification of the Lease made without Lender's prior written consent; or

(e)    liable for any security deposit Tenant might have paid to Landlord or any prior landlord, except to the extent Lender has actually received said security deposit.

5.    Upon Lender's succeeding to Landlord's interest under the Lease, Tenant covenants and agrees to attorn to Lender or a purchaser at a foreclosure or trustee's sale, to recognize such successor landlord as Tenant's landlord under the Lease, and to be bound by and perform all of the obligations and conditions imposed upon Tenant by the Lease. If requested by Lender or any subsequent owner, Tenant shall execute a new lease with Lender, for a term equal to the remaining term of the Lease and otherwise containing the same provisions and covenants of the Lease.

K-3

6.    Prior to terminating the Lease due to a default by Landlord thereunder, Tenant agrees to notify Lender of such default and give Lender the opportunity to cure such default within thirty (30) days of Lender's receipt of such notice (or, if such default cannot reasonably be cured within such thirty (30) day period, Lender shall have such longer time as may be necessary to cure the default; provided that Lender commences the cure within such period and diligently pursues the cure thereafter).

7.    This Agreement shall be binding upon and inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

8.    This Agreement can be modified only in writing duly executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

**TENANT:**

_____

By: _____
Name: _____
Its: _____

**LENDER:**

**MERRILL LYNCH CAPITAL, a Division of
Merrill Lynch Business Financial Services Inc.,
a Delaware corporation.**

By: _____
Name: _____
Its: _____

K-4

STATE OF _____   )
                                  )ss.
COUNTY OF _____          )


      On _____, 200__, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence, to be the person who executed the within instrument as the _____ of _____, a _____ corporation, the general partner **OR** managing member of _____and acknowledged to me that such corporation caused the foregoing instrument to be executed pursuant to its Bylaws or a resolution of its Board of Directors.

      WITNESS my hand and official seal.


                          _____
                          Notary Public

[SEAL]             My commission Expires: _____

K-5

STATE OF ILLINOIS        )
                         )ss.
COUNTY OF COOK           )


On _____, 200_, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence, to be the person who executed the within instrument as _____ Vice President of Merrill Lynch Capital, a Division of Merrill Lynch Business Financial Services Inc., a Delaware corporation, the corporation that executed the within instrument and acknowledged to me that such corporation caused the foregoing instrument to be executed pursuant to its Bylaws or a resolution of its Board of Directors.

WITNESS my hand and official seal.


                              _____
                              Notary Public

[SEAL]                        My commission Expires: _____


K-6

## SCHEDULE A

## LEGAL DESCRIPTION

K-7

# EXHIBIT L

## OWNER'S STATEMENT

BOI 15806693.8 / 37050-000001

OWNER-OWNER'S STATEMENT

State of _N.C._

County of _Mecklenburg_

K-2

K-3

BOI 15806693.8 / 37050-000001

## EXHIBIT M

### DISBURSEMENT REQUISITION

 **Merrill Lynch**

### DISBURSEMENT REQUISITION

Pursuant to the Loan Agreement dated _____, 20___ between _____
_____ (Borrower) and Merrill Lynch Capital, a division of Merrill Lynch Business
Financial Services Inc. (Lender), Borrower hereby requests a disbursement from the Loan in the amount of:

$_____.

*The Borrower hereby certifies as true and swears under oath, to the Lender, the following:*

    (a)  The cost of Change Orders regarding the Project is:

            Change Orders agreed upon with Contractor: $_____.

            Change Orders in dispute with Contractor: $_____.

            Potential Change Orders under review by Borrower or Contractor: $_____.

    (b)  All Change Orders are reflected above or have been previously submitted to Lender for approval.

    (c)  The Loan is "in balance" (including any Change Orders).

    (d)  No event or condition exists which could delay or prevent the completion of the Project by the Completion Date.

    (e)  The amount requested for disbursement herein (i) has been approved by the Borrower as payment for work and materials furnished for the Project in conformance with the Plans (as modified by any Change Orders), (ii) represents the actual amount payable to the Contractor or subcontractors who have performed work on the Project, and (iii) will be used as payment for the work described on the attached documentation and for no other reason.

    (f)  All prior disbursements advanced by Lender to Borrower have been paid to the parties entitled to such payment, and all such Loan proceeds have been used for the purposes set forth in the Loan Agreement.

    (g)  With respect to the Loan Agreement: (i) all conditions and obligations precedent to this disbursement have been satisfied; (ii) all representations and warranties made by the Borrower to Lender continue to be accurate; and (iii) no Default has occurred or continues to exist.

Capitalized terms set forth above shall have the meanings described in the Loan Agreement. The Borrower acknowledges that Lender is relying on the accuracy of the above statements in making any disbursement.

IN WITNESS WHEREOF, the Borrower has executed this Disbursement Requisition as of

M-1

DATE: _____ ____, 20___.

[INSERT BORROWER NAME]

By:_____

Name:_____

Title:_____

M-2

## SCHEDULE I

## DEFINITIONS

**Defined Terms.**

The following terms as used herein shall have the following meanings:

**A Note:**  As such term is defined in Recital B.

**Accredited Investor:**  Shall mean an "accredited investor" as defined in Rule 501 of Regulation D of the Securities Act of 1933 (15 USC § a et. seq.)

**Accrued Interest:**  As such term is defined in Section 2.6.

**Adjusted Actual Rent:**  The annualization of all amounts collected from tenants of the Project for the most current month, excluding percentage rents, nonrecurring income and non-property related income (as determined by Lender in its sole discretion) and income from tenants (i) that are thirty (30) or more days delinquent, (ii) that are in bankruptcy (even if current), (iii) whose leases terminate within six (6) months (as adjusted for space re-leased upon terms acceptable to Lender in its sole discretion (iv) that have been thirty (30) or more days delinquent four (4) or more times during the immediately prior twelve (12) month period.

**Affiliate:**  With respect to a specified person or entity, any individual, partnership, corporation, limited liability company, trust, unincorporated organization, association or other entity which, directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with such person or entity, including, without limitation, any general or limited partnership in which such person or entity is a partner.

**Agreement:**  This Loan Agreement.

**Anti-Money Laundering Laws:**  As such term is defined in Section 4.2(r).

**Application:**  As such term is defined in Section 2.2(b).

**Appraisal:**  An appraisal of the Project performed in accordance with FIRREA and Lender's appraisal requirements by an independent appraiser licensed in the state in which the Project is located and selected and retained by Lender.  Borrower may provide to Lender a copy of any FIRREA appraisal prepared for another lender within the past six (6) months.  Lender may, in its sole discretion: (a) accept such appraisal; (b) request an update of such appraisal; and (c) retain a state licensed appraiser to perform a new appraisal.

**Approved Change:**  As such term is defined in Section 4.1(h).

**Architect:**  A registered and accredited architect engaged by Borrower and approved by Lender for the design and supervision of the Improvements or any portion of the Improvements.

1

**Authorized Representative**: William Obeid, as described in <u>Section 4.3</u>.

**Automated Clearing House**: A secure network that connects banks to one another by way of the Federal Reserve Board or other Automated Clearing House operators, which network enables electronic payments to be handled and processed.

**B Note**: As such term is defined in <u>Recital B</u>.

**Base Rate**: The London Interbank Offered Rate (LIBOR) rate of interest per annum (rounded upwards, if necessary, to the nearest 1/100,000 of 1%) equal to the rate of interest which is identified and normally published by Bloomberg Professional Service Page BBAM 1 (the "**Page**") as the offered rate for loans in U.S. Dollars under the caption British Bankers Association LIBOR Rates at 11:00 A.M. London time. The Base Rate will float daily and, for each day, shall be equal to the one (1) month LIBOR rate for such day set forth on the Page. If Bloomberg Professional Service no longer reports the Base Rate or Lender determines in good faith that the rate so reported no longer accurately reflects the rate available to Lender in the London Interbank Market or if such index no longer exists or if Page BBAM 1 no longer exists or accurately reflects the rate available to Lender in the London Interbank Market, Lender may select a replacement index or replacement page, as the case may be.

**Borrower**: As such term is defined in the opening paragraph of this Agreement, and including any successor obligor on the Loan from time to time.

**Borrower's Equity Contribution**: As such term is defined in <u>Section 2.2(d)(v)</u>.

**Building Permits**: All Governmental Approvals necessary for commencement of construction of the Improvements.

**Business Day**: A day of the year on which banks are not required or authorized to close in Chicago, Illinois.

**Capital Improvements**: As such term is defined in <u>Section 2.2(b)</u>.

**Change Orders**: As such term is defined in <u>Section 4.1(h)</u>.

**Closing Date**: The date of the disbursement of the Initial Funding Amount of the Loan.

**Completion**: As such term is defined in <u>Section 4.1(i)</u>.

**Completion Date**: As such term is defined in <u>Section 4.1(i)</u>.

**Construction Budget**: As such term is defined in <u>Section 2.2(b)</u>.

**Construction Completion Schedule**: As such term is defined in <u>Section 2.2(b)</u>.

**Construction Contract**: Shall mean any contract for the construction of any of the Improvements between the Borrower and the Construction Contractor.

**Construction Contractor:** A bondable general contractor or contractors with respect to the construction of the Improvements, having been approved by Lender.

**Construction Documents:** Shall collectively mean the Construction Contract, the Plans, the Construction Completion Schedule and the Construction Budget, as any of the same may be amended or modified from time to time.

**Control:** As such term is used with respect to any person or entity, including the correlative meanings of the terms "controlled by" and "under common control with", shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of such person or entity, whether through the ownership of voting securities, by contract or otherwise.

**Default or default:** Any event, circumstance or condition, which, if it were to continue uncured, would, with notice or lapse of time or both, constitute an Event of Default hereunder.

**Debt Service Coverage Ratio:** The ratio of (i) Net Operating Income, to (ii) Total Annual Debt Service.

**Developer Fee:** Any fee or other payment to Borrower or to any Affiliate of Borrower in connection with the construction of the Improvements.

**Effective Rent:** The annualized sum of the following quotient for all of the Leases (as reasonably determined by Lender): (x) total rent due over the term of a Lease <u>less</u> any payments or concessions which Lender, in its sole discretion, deems to be a rent concession, <u>divided by</u> (y) the total number of months in the term of such Lease.

**Engineer:** The engineer or engineers retained by Borrower in connection with the engineering of the Improvements.

**Environmental Documents:** As such term is defined in <u>Section 6.1</u>.

**Environmental Indemnitor:** Individually, Borrower and each Principal, collectively referred to as Environmental Indemnitors.

**Environmental Obligations:** As such term is defined in <u>Section 6.7</u>.

**Environmental Proceedings:** Any environmental proceedings, whether civil (including actions by private parties), criminal, or administrative proceedings, relating to the Project.

**Environmental Reports:** As such term is defined in <u>Section 6.3</u>.

**ERISA:** The Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder from time to time.

**Event of Default:** As such term is defined in <u>Section 8.1</u>.

**Excess Cash Flow:** For any period means the Net Cash Flow for such period <u>less</u> current

3

principal and interest payments due on the Loan (or on any loan(s) which refinance the Loan) for such period.

**Excess Interest:**  As such term is defined in <u>Section 11.5</u>.

**Exit Fee:**  As such term is defined in <u>Section 2.7</u>.

**Expenses:**  All losses, fines, penalties, judgments, awards, costs and expenses (including, without limitation, reasonable attorneys' fees and costs, the allocated costs for services of in-house counsel, and expenses of investigation).

**Extended Maturity Date:**  As such term is defined in <u>Section 2.3(a)</u>.

**Extension Option:**  As such term is defined in <u>Section 2.3(a)</u>.

**Extension Term:**  As such term is defined in <u>Section 2.3(a)</u>.

**FIRREA:**  The Financial Institutions Reform, Recovery And Enforcement Act of 1989, as amended from time to time.

**Food Lion:**  Shall mean Food Lion, LLC, a North Carolina limited liability company having an address of P.O. Box 1330, Salisbury, North Carolina 28145-1330.

**Food Lion Lease:**  Shall mean that certain lease between Borrower and Food Lion, dated as of November 29, 2006, for 34,928 square feet of space in the Project, with a term of no less than fifteen (15) years and an initial net annual rent of no less than $13.00 per square foot, as the same has been or may be amended or modified from time to time.

**Force Majeure Events:**  As such term is defined in <u>Section 4.1(i)</u>.

**Governmental Approvals:**  Collectively, all consents, licenses, and permits and all other authorizations or approvals required from any Governmental Authority to construct, improve or operate the Project.

**Governmental Authority:**  Any federal, state, county or municipal government, or political subdivision thereof, any governmental or quasi-governmental agency, authority, board, bureau, commission, department, instrumentality, or public body, or any court, administrative tribunal, or public utility.

**Guaranteed Amount:**  An amount equal to twenty percent (20%) of the Loan Amount.

**Hazardous Material:**  Means and includes gasoline, petroleum, asbestos containing materials, explosives, radioactive materials, microbial matter, biological toxins, mycotoxins, mold or mold spores or any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any Law of any Governmental Authority having jurisdiction over the Project or any portion thereof or its use, including: (i) any "hazardous substance" defined as such in (or for purposes of) the Comprehensive Environmental

4

Response, Compensation and Liability Act, 42 U.S.C.A. § 9601(14) as may be amended from time to time, or any so-called "superfund" or "superlien" Law, including the judicial interpretation thereof; (ii) any "pollutant or contaminant" as defined in 42 U.S.C.A. § 9601(33); (iii) any material now defined as "hazardous waste" pursuant to 40 C.F.R. Part 260; (iv) any petroleum, including crude oil or any fraction thereof; (v) natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel; (vi) any "hazardous chemical" as defined pursuant to 29 C.F.R. Part 1910; and (vii) any other toxic substance or contaminant that is subject to any other Law or other past or present requirement of any Governmental Authority. Any reference above to a Law, includes the same as it may be amended from time to time, including the judicial interpretation thereof.

**Holdback:** As such term is defined in Section 2.2(b).

**Improvements:** Shall mean the improvements to be constructed on the Land.

**Include or including:** Including, but not limited to.

**Indebtedness:** As such term is defined in Section 8.1(a).

**Indemnified Party:** As such term is defined in Section 4.2(k).

**Initial Funding Amount:** The amount set forth in Section 2.2(a).

**Initial Maturity Date:** As such term is defined in Section 2.3(a).

**Insurance Proceeds:** As such term is defined in Section 7.1(a).

**Interest Rate:** As such term is defined in Section 2.5.

**Internal Revenue Code:** The Internal Revenue Code of 1986, as amended from time to time.

**Land:** As such term is defined in Recital A.

**Late Charge:** As such term is defined in Section 2.8(b).

**Laws:** Collectively, all federal, state and local laws, statutes, codes, ordinances, orders, rules and regulations, including judicial opinions or presidential authority in the applicable jurisdiction.

**Leases:** The collective reference to any and all leases, subleases and occupancy agreements affecting the Project or any part thereof now existing or hereafter executed and all amendments, modifications or supplements thereto approved in writing by Lender.

**Lender:** As defined in the opening paragraph of this Agreement, and including any successor holder of the Loan from time to time.

**Lender's Consultant:** Newbanks, Inc/Raleigh, or other independent consulting

5

architect, inspector, and/or engineer designated by Lender in Lender's sole discretion.

**Lien Bond:** A bond prepared pursuant to the Mechanics Lien law and satisfactory to Lender in all respects.

**Lien Form:** A Partial Waiver and Subordination of Lien in the form set forth in the Mechanics Lien Law

**Loan:** As such term is defined in Recital B.

**Loan Amount:** The maximum amount of the Loan as initially set forth in Recital B.

**Loan Application:** As such term is defined in Section 2.1.

**Loan Documents:** The collective reference to this Agreement, the documents and instruments described in Recital C and Section 2.1, and all the other documents and instruments entered into from time to time, evidencing or securing the Loan or any obligation of payment thereof or performance of Borrower's or any Principal's obligations in connection with the transaction contemplated hereunder, each as amended.

**Loan Year:** The period from the Closing Date through the last day of the same month in the following year and thereafter each successive twelve (12) month period.

**Lockout Period:** As such term is defined in Section 2.4.

**Major Subcontractor:** Means any subcontractor providing labor or materials for the construction of the Improvements under a subcontract having a cost in the excess of $100,000.00.

**Managing Member:** Gemini Youngsville Crossing Manager, LLC, a North Carolina limited liability company, the sole managing member of Borrower.

**Material Adverse Change or material adverse change:** If, in Lender's reasonable discretion, the business prospects, operations or financial condition of a person, entity or property has changed in a manner which could impair the value of Lender's security for the Loan, prevent timely repayment of the Loan or otherwise prevent the applicable person or entity from timely performing any of its material obligations under the Loan Documents.

**Maturity Date:** The Initial Maturity Date, or, if Borrower satisfies the conditions to extend the term of the Loan pursuant to Section 2.3(a), the Extended Maturity Date.

**Maximum Interest Accrual:** As such term is defined in Section 2.6.

**Mechanic's Lien Law:** Article 2 of Chapter 44A of NC General Statutes, as amended.

**Minor Change:** As such term is defined in Section 4.1(h).

**Mortgage:** As such term is defined in Recital C.

6

**Net Cash Flow:** For any period means, all revenues of Borrower, determined on a cash basis, derived from the ownership, operation, use, leasing and occupancy of the Project during such period including rents, lease termination fees, expense reimbursements, interest income and forfeited security and other deposits for such period <u>less</u> the actual, customary and reasonable expenses actually paid in connection with operating the Project paid during such period (including a management fee not to exceed four percent (4%) of Net Cash Flow, and deposits made into reserves approved by Lender or required by the Loan Documents (provided, however, that amounts included in such reserves shall not also be included as an expense upon disbursement from such reserves) <u>excluding:</u> (A) any loan proceeds, (B) proceeds or payments under insurance policies (but including proceeds of business interruption insurance); (C) condemnation proceeds; (D) any security deposits received from tenants in the Project, unless and until the same are applied to rent or other obligations in accordance with the tenant's Lease; and (E) any other extraordinary items approved by Lender, in its sole but reasonable discretion.

**Net Operating Income:** Shall mean Revenue <u>less</u> Operating Expenses for the immediately prior twelve (12) month period.

**Net Proceeds:** The value of all consideration received in connection with any Transfer or refinancing, including cash, notes, assumed indebtedness, deferred payments (contingent or otherwise), prepaid expenses, non-customary prorations in favor of the seller less reasonable and customary costs and expenses (including broker's commissions), provided that with respect to a Transfer of Release Parcel, Net Proceeds shall be at least 93% of the gross sale price of a Release Parcel, allowing up to 7% for reasonable costs actually incurred by Borrower directly related to the sale of such Release Parcel.

**Note:** As such term is defined in <u>Recital B</u>.

**OFAC Lists:** As such term is defined in <u>Section 4.2(r)</u>.

**OFAC Rules:** As such term is defined in <u>Section 4.2(r).</u>

**Operating Expenses:** For any period, the actual and customary expenses incurred in connection with operating the Project, determined on a stabilized accrual basis for such period (as reasonably adjusted by Lender), <u>including, without limitation:</u> (i) recurring expenses (e.g., real estate tax and insurance deposits, tenant improvements, leasing commissions, and such others as determined by Lender) which are not paid out of the replacement reserve, (ii) management fees (whether paid or not) in an amount not less than four percent (4%) of effective gross income, and (iii) a replacement reserve (whether reserved or not) of not less than $0.25 per square foot of net rentable space, as adjusted by Lender in its sole discretion for projected capital expenditures, <u>excluding</u> payments due on the Loan.

**Organizational Documents:** As such term is defined in <u>Section 5.1(e)</u>.

**Patriot Act:** As such term is defined in <u>Section 4.2(r)</u>.

**Permitted Exceptions:** (i) Those matters listed on Schedule B to the Title Policy which affect title to the Project as of the closing, (ii) the Food Lion Lease, (iii) customary easements for

7

utilities and services necessary or desirable for the use and operation of the Project, and (iv) such other title exceptions as Lender may reasonably approve in writing.

**Personal Property:**  As such term is defined in Section 4.2(g).

**Plans:**  The plans and specifications submitted to and approved by Lender, with respect to construction of Improvements on any portion of the Land, as amended from time to time with the approval of Lender in accordance with the terms of this Agreement.

**Principal:**   Individually or collectively, William Obeid, Christopher LaMack, Dante Massaro and Atit Jariwala.

**Proceeding:**  As such term is defined in Section 11.3.

**Prohibited Person(s):**  As such term is defined in Section 4.2(r).

**Project:**  The collective reference to (i) the Land, together with all buildings, structures and improvements located or to be located thereon, including the Improvements, (ii) all rights, privileges, easements and hereditaments relating or appertaining thereto, and (iii) the Personal Property.

**Project Yield:**  The quotient of (i) Net Operating Income from the Project as determined by Lender's audit, at Borrower's expense, at such time, divided by (i) the sum of the then current outstanding principal balance of the Loan plus any anticipated future fundings on the Loan plus accrued and unpaid interest thereon.

**Projected Net Proceeds:**  The Projected Net Proceeds of the Transfer of a Release Parcel, as set forth in Exhibit D attached hereto.

**Property Tax and Insurance Reserve:**  As such term is defined in Section 4.2(f).

**Registry:**  The Franklin County, North Carolina Registry of Deeds.

**Release Date:**  As such term is defined in Section 2.10(b).

**Release Parcel:**  As such term is defined in Section 2.10(a).

**Release Proceeds:**  The Net Proceeds of the Transfer of a Release Parcel.

**Remedial Work:**  As such term is defined in Section 6.4.

**Retained Liabilities:**  As such term is defined in Paragraph 1 of the Limited Joinder.

**Revenue:**  The lesser of (i) Adjusted Actual Rent or (ii) Effective Rent, both based on an occupancy factor of the lesser of (a) actual occupancy (if open for business and tenants are paying rent), or (b) an assumed ninety-five percent (95%) occupancy rate.

**Single Purpose Entity:**  An entity which (i) exists solely for the purpose of owning and

8

operating the Project, (ii) conducts business only in its own name, (iii) does not engage in any business other than the ownership, management and operation of the Project, (iv) does not hold, directly or indirectly, any ownership interest (legal or equitable) in any entity or any real or personal property other than the interest which it owns in the Project, (v) does not have any assets other than those related to its interest in the Project and does not have any debt other than as permitted by this Agreement and does not guarantee or otherwise obligate itself with respect to the debts of any other person or entity, (vi) has its own separate books, records, accounts, financial statements and tax returns (with no commingling of funds or assets), (vii) holds itself out as being a company separate and apart from any other entity, (viii) observes limited liability company/partnership/corporate formalities, as the case may be, independent of any other entity.

**Tenant:** Any tenant under any Lease.

**Tenant Improvements:** As such term is defined in Section 2.2(b).

**Title Insurer:** Fidelity National Title Insurance Company, or such other title insurance company licensed in the State of North Carolina as may be approved in writing by Lender in Lender's sole discretion.

**Title Policy:** An ALTA Mortgagee's Loan Title Insurance Policy with extended coverage issued by the Title Insurer insuring the lien of the Mortgage as a valid first, prior and paramount lien upon the Project and all appurtenant easements, and subject to no other exceptions other than the Permitted Exceptions and otherwise satisfying the requirements of Lender.

**Total Annual Debt Service:** The annualized debt service payments on then outstanding principal balance of the Loan plus any anticipated future fundings on the Loan assuming (i) a per annum interest rate equal to the Interest Rate as of the close of business on the day preceding the date of calculation, and (ii) monthly payments of principal based on an amortization period of twenty five (25) years.

**Transfer:** Except as otherwise permitted hereunder or approved by Lender, any (i) sale, transfer, lease, conveyance, alienation, pledge, assignment, mortgage, encumbrance hypothecation or other disposition (other than grants of easements and similar rights as permitted hereunder) of (a) all or any portion of the Project or any portion of any other security for the Loan, (b) all or any portion of the Borrower's right, title and interest (legal or equitable) in and to the Project or any portion of any other security for the Loan, or (c) any interest in Borrower (including any interest in the profits, losses or cash distributions in any way relating to the Project or the Borrower) or (ii) creation of any new ownership interest in Borrower (including any interest in the profits, losses or cash distributions in any way relating to the Project or Borrower).

**Walgreens Outparcel:** Lot 1 as shown on a certain plat entitled "Recombination for Gemini Acquisition Company" dated February 9, 2007, prepared by Cawthorne, Moss & Panciera, P.C. to be recorded in the Franklin County Registry.

BOI 15806693.8 / 37050-000001