# EXHIBIT 2

3

426

Doc ID: 003886230014 Type: CRP
Recorded: 11/18/2009 at 09:52:53 AM
Fee Amt: $53.00 Page 1 of 14
Franklin County North Carolina
Linda H. Stone Register of Deeds

BK **1754** PG **426-439**

by: Betty Harrington Deputy

## AMENDATORY AGREEMENT

*Please cross index with the instrument recorded in Book 1603, at Page 954*

This AMENDATORY AGREEMENT (this "Agreement") is entered into as of this the 12th day of November, 2009 (the "Effective Date") by and between GEMINI YOUNGSVILLE CROSSING, LLC, a North Carolina limited liability company (the "Borrower") and GE BUSINESS FINANCIAL SERVICES, INC., a Delaware corporation (formerly known as Merrill Lynch Capital, a division of Merrill Lynch Business Financial Services Inc.) (the "Lender");

### WITNESSETH: That:

WHEREAS, Lender made that certain mortgage loan to Borrower (the "Loan") in the amount of up to Seventeen Million Eight Hundred Twenty Five Thousand and 00/100 DOLLARS ($17,825,000.00) for certain construction and development costs in connection with Youngsville Crossing Shopping Center, U.S. Highway 1, Town of Youngsville, Franklin County, North Carolina (the "Project") pursuant to that certain Loan Agreement between Borrower and Lender dated February 14, 2007 (the "Loan Agreement"); and

WHEREAS, the Loan is evidenced by that certain Promissory Note (A Note) dated February 14, 2007 made by Borrower in the original principal amount of Fifteen Million Fourteen Thousand Four Hundred Eighty Six and 00/100 DOLLARS ($15,014,486.00) and payable to Lender (the "A Note") and that certain Promissory Note (B Note) dated February 14, 2007 made by Borrower in the original principal amount of Two Million Eight Hundred Ten Thousand Five Hundred Fourteen and 00/100 DOLLARS ($2,810,514.00) and payable to Lender (the "B Note") (the A Note and the B Note and all amendments thereto and substitutions therefor are hereinafter referred to as the "Note"); and

WHEREAS, Borrower's obligations under the Loan Agreement, the Note and otherwise in connection with the Loan are purportedly secured by, among other items, (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated February 14, 2007 (as amended and supplemented from time to time, the "Mortgage") encumbering the Project, and purporting to grant to Charles Clement, Attorney, as trustee for the benefit of Merrill Lynch Capital, a division of Merrill Lynch Capital Financial Services, Inc., a first priority lien on the Project as security for the Loan, and (ii) that certain (a) Limited Joinder dated February 14, 2007 (the "Limited Joinder"), and (b)

427

Performance and Completion Guaranty dated February 14, 2007 (the "Guaranty"), each made by William Obeid, Christopher LaMack, Dante Massaro and Atit Jariwala (together, the "Principals"); and

WHEREAS, in connection with Borrower's proposed sale of a portion of the Project to McDonald's Real Estate Company (the "McDonald's Sale"), which portion of the Project is more particularly described on Exhibit A attached hereto and incorporated herein by this reference (the "McDonald's Parcel"), Borrower has requested that Beneficiary cause the McDonald's Parcel to be released from the lien of the Mortgage; and

WHEREAS, the McDonald's Parcel and the adjoining portion of the Project to be retained by the Borrower as more particularly described on Exhibit B attached hereto and incorporated herein by this reference (the "Residual Parcel") in the aggregate constitute all of the Release Parcels referred to on Exhibit D to the Loan Agreement as "Outparcel 3 (Auto Zone)" ("Outparcel 3") and as "Outparcel 4" ("Outparcel 4"); however, the McDonald's Parcel and the Residual Parcel, as currently configured, do not constitute Release Parcels (as defined in the Loan Agreement) because the McDonald's Parcel comprises of all of Outparcel 4 and a portion of Outparcel 3 and the Residual Parcel comprise of the remainder of Outparcel 3; and

WHEREAS, the Borrower has requested that the Lender amend and modify certain provisions of the Loan Agreement to reconfigure Outparcel 3 and Outparcel 4 such that the McDonald's Parcel and the Residual Parcel constitute Release Parcels, and the Lender, subject to the terms and conditions hereof, desires so to amend and modify the Loan Agreement;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower and the Lender mutually agree as follows:

1. <u>Definitions</u>. Capitalized terms used but not otherwise defined in this Agreement have the meanings given them in the Loan Agreement.

2. <u>Amendments</u>.

    2.1 <u>Global Amendments to the Loan Documents</u>. As of the Effective Date, the Loan Documents have been and are hereby modified as follows:

        2.1.1 By redefining "Lender", as used in the Loan Documents, so that such term shall mean and refer to the current name of Lender, as used in this Agreement.

        2.1.2 By amending the address of Lender, wherever it appears in the Loan Documents, to read "c/o GE Capital Real Estate, 500 West Monroe, 10th Floor, Chicago, Illinois 60661, Attention: Asset Manager."

        2.1.3 By redefining the term "Loan Agreement," as used in the Loan Documents, so that such term shall mean and refer to the Loan Agreement, as amended by this Agreement.

        2.1.4 By redefining the term "A Note," as used in the Loan Documents, so that such term shall mean and refer to the A Note, as amended by this Agreement.

        2.1.5 By redefining the term "B Note," as used in the Loan Documents, so that such term shall mean and refer to the B Note, as amended by this Agreement.

428

2.1.6 By redefining the term "Loan Documents," as used in the Loan Documents, so that such term shall include the Loan Agreement, the A Note, the B Note, and the Mortgage, all as amended by this Agreement, in addition to the other documents, instruments and agreements described as "Loan Documents" therein.

2.2 Specific Amendments to the Loan Agreement. As of the Effective Date, the Loan Agreement has been and is hereby modified as follows:

2.2.1 By redefining the term "Agreement," as used in the Loan Agreement, so that such term shall mean and refer to the Loan Agreement, as amended by this Agreement.

2.2.2 By redefining any and all references to Outparcel 3 under the Loan Agreement to mean and refer to the Residual Parcel.

2.2.3 By redefining any and all references to Outparcel 4 under the Loan Agreement to mean and refer to the McDonald's Parcel.

2.2.4 Section 2.10(a) of the Loan Agreement has been and is hereby amended to define Release Parcel to include each of Outparcel 3 and Outparcel 4, as modified hereby.

2.2.5 Exhibit D to the Loan Agreement hereby is deleted in its entirety and is replaced with Exhibit D attached hereto and incorporated herein by this reference. Any and all references in the Loan Agreement to Exhibit D to the Loan Agreement henceforth shall refer to Exhibit D attached hereto.

2.3 Specific Amendment to the A Note. As of the Effective Date, the A Note has been and is hereby modified by redefining the term "Note," as used in the A Note, so that such term shall mean and refer to the A Note, as amended by this Agreement.

2.4 Specific Amendment to the B Note. As of the Effective Date, the B Note has been and is hereby modified by redefining the term "Note," as used in the B Note, so that such term shall mean and refer to the B Note, as amended by this Agreement.

2.5 The Mortgage. Notwithstanding anything to the contrary herein, Borrower does not acknowledge or confirm the validity of the Mortgage and reserves any claim with respect thereto, including, without limitation, the claim the Mortgage does not run in favor of Lender; provided, however, that in no event does Lender concede, nor shall this Agreement be construed to concede, the existence or validity of any such claim reserved by Borrower.

3. Agreements. The parties hereby agree as follows:

3.1 Developer Fee; Exit Fee. In connection with the proposed McDonald's Sale, (i) notwithstanding Section 2.2(b) of the Loan Agreement, or any other provision thereof, to the contrary, Borrower irrevocably and unconditionally waives that portion of Developer Fee attributable to the McDonald's Sale due to Borrower, and (ii) notwithstanding Section 2.4(a) of the Loan Agreement, or any other provision thereof, to the contrary, the proportionate share of the Exit Fee otherwise due and payable to Lender in accordance with Section 2.4(a) of the Loan Agreement upon the occurrence of the McDonald's Sale shall be due upon the occurrence of the McDonald's Sale but not payable until after the McDonald's Sale upon the repayment of the Loan (whether on the Maturity Date or on any other date) or upon the acceleration of the Loan by Lender as provided in Section 2.7 of the Loan Agreement, whichever is sooner.

3

429

3.2   **Reaffirmation of Representations and Warranties.** Borrower hereby reaffirms that (a) all representations and warranties made by the Borrower to Lender in the Loan Documents (other than the Mortgage or relating to the Mortgage) continue to be accurate, and (b) no Default has occurred or continues to exist under any of the Loan Documents.

4.   **Representations and Warranties.** As a material inducement to Lender hereunder, Borrower represents and warrants to Lender as follows:

4.1   Borrower is an entity that is duly created, validly existing and in good standing under the laws of the state of its organization, that the party signing on behalf of it is authorized on its behalf to execute and deliver this Agreement and any other instrument executed and delivered in connection herewith, and that upon such execution and delivery, Borrower shall be bound by all such instruments.

4.2   Borrower has the legal right, power, capacity and authority to enter into and perform its covenants, obligations and agreements under this Agreement and the other instruments referenced herein and delivered pursuant hereto, that all corporate, company, partnership and other actions required in connection with the authorization, execution, delivery and performance of this Agreement by Borrower have been duly taken, and that when executed and delivered by Borrower, this Agreement shall constitute the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms.

4.3   Neither the execution and delivery of this Agreement, nor consummation of any of the transactions contemplated herein, nor compliance with the terms and provisions hereof, will contravene any provision of law, statute, rule or regulation to which Borrower is subject or any judgment, decree, license, order or permit applicable to Borrower, or will conflict or will be inconsistent with, or will result in any breach of any of the terms of the covenants, conditions or provisions of, or constitute a delay under any other obligation of Borrower.

4.4   No consent, approval, authorization or order of any court or governmental authority or third party is required in connection with the execution, delivery and performance by Borrower.

4.5   Exhibit E attached hereto and incorporated herein by this reference accurately sets forth the descriptions of the Release Parcel references set forth in the Loan Agreement, as modified hereby, and their corresponding lot numbers set forth in the subdivision plats for the Project.

4.6   As of the closing of the McDonald's Sale, the McDonald's Parcel and the Residual Parcel have been formally designated as distinct tax lots, separate and legally subdivided from the remainder of the Project.

4.7   The Project, less and except any portion of the Project heretofore released from the lien of the Mortgage by Lender, including the location, existence, use, occupancy and operation thereof, is in compliance with all applicable Legal Requirements, including, without limitation, the building and zoning laws of the jurisdiction in which the Project is situated and all easements, declarations, covenants and restrictions affecting the Project and has unencumbered ingress and egress to the Project.

4.8   With respect to the McDonald's Sale, with respect to the amendment and modification of the Loan and the Loan Documents set forth herein, including, without limitation, the modification of the size of the McDonald's Parcel and the Residual Parcel and the designation thereof as Release Parcels only (the "Subject Transactions"), (i) Borrower has no defenses, offsets or counterclaims as against the indebtedness evidenced and secured by the Note and the other Loan Documents, all as amended hereby; (ii) Lender has performed each and every one of its obligations to Borrower under the Note, the Loan and

4

Security Agreement and the other Loan Documents, all as amended hereby; and (iii) Lender is not in default of any of its obligations to Borrower under the Loan Documents. Borrower expressly reserves any claims it may have under (i), (ii) or (iii) with respect to matters other than the Subject Transactions; provided, however, that in no event does Lender concede, nor shall this Agreement be construed to concede, the existence or validity of any such claim reserved by Borrower.

4.9  Without limiting any defects, defenses or counterclaims Borrower may have relating to matters other than the Subject Transactions, the Loan Documents (other than the Mortgage) are in all respects the legal, valid and binding obligations of Borrower, enforceable against Borrower in accordance with their respective terms and, with respect to the Subject Transactions, free from any and all infirmities, defenses or counterclaims of any nature whatsoever.

4.10  There does not exist any Default or any other event, condition or state of facts, which, with notice or the passage of time or both, would constitute a Default under the Loan Documents.

4.11  As of the Effective Date of this Agreement and immediately prior to giving effect to the McDonald's Sale, the principal sum of $14,109,963.70 and the interest sum of $45,980.69 is due and owing to Lender under the Note.

5.  Miscellaneous.

5.1  Entire Agreement. The Loan Documents, as the same may have been amended by this Agreement, contain the entire terms of the agreement between Borrower and Lender with respect to the Loan and the use of the Loan proceeds by Borrower.

5.2  Severability. If any provision of this Agreement is held to be unenforceable, in whole or in part, such holding will not affect the validity of the other provisions of this Agreement.

5.3  Governing Law. This Agreement is governed by and shall be construed in accordance with the internal laws of the State of Illinois, without regard to conflicts of law principles except as provided in the Mortgage.

5.4  Notices. All notices given under this Agreement shall be in writing and shall be deemed delivered: (a) three (3) business days after deposit in the United States mail, registered or certified mail, return receipt requested, postage pre-paid; (b) upon transmission, if sent via facsimile (provided that the sender receives an automated, machine generated confirmation of transmission); or (c) one (1) business day after deposit with a national overnight courier, in each case addressed or faxed as follows:

If to the Lender:

GE Business Financial Services, Inc.
c/o GE Capital Real Estate
500 West Monroe, 10th Floor
Chicago, Illinois 60661
Attention: Ingrid Carlino, Asset Manager
Fax: (312) 441-7711

5

431

If to Borrower:

Gemini Youngsville Crossing, LLC
16740 Birkdale Commons Parkway, Suite 301
Huntersville, North Carolina 28078
Attention: Dante Massaro
Fax: (704) 895-7846

The parties may change the foregoing contact information for notice hereunder by delivery of notice in accordance with the provisions of this Section.

5.5  No Other Change. Except as herein expressly amended, each and every term, condition, warranty and provision of the Loan Documents shall remain in full force and effect, and such are hereby ratified, confirmed and approved by the parties hereto. Nothing herein shall be construed to alter or affect the priority of the lien or title created by the Loan Documents, it being the expressly declared intention of the parties hereto that no novation of the Loan Documents be created hereby.

5.6  No Waiver. No failure or delay on the part of the Lender in exercising any of its rights or remedies under this Agreement, the other Loan Documents or existing at law or in equity shall operate as a waiver of any right or remedy of the Lender with respect to any obligations owed to it, and no single or partial exercise of any right or remedy hereunder shall operate as a waiver or a preclusion to the exercise of any other rights or remedies the Lender may have under any agreement, document or instrument. Except as expressly set forth herein, nothing in this Agreement (i) constitutes an approval, waiver, limitation or modification of any of Lender's rights or remedies under the Loan Documents or any approval, agreement or promise by Lender with respect to the Loan Documents, (ii) is intended to waive any existing default or Event of Default under the Loan Agreement or the other Loan Documents, or (iii) constitutes an agreement by Lender to consent to or approve of any action by or requested by Borrower or to exercise or to forbear from exercising any rights or remedies that Lender may have under the Loan Documents or otherwise.

5.7  Descriptive Headings. Headings used herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

5.8  Parties in Interest. This Agreement shall be binding upon and inure to the benefit of each party hereto and each of their respective successors and assigns, and nothing in this Agreement is intended to confer upon any other person, whether or not named herein, any rights or remedies of any nature whatsoever under or by reason of this Agreement.

5.9  Counterparts. This Agreement may be executed in any number of counterparts, by original or facsimile signature, each of which when executed and delivered shall be deemed an original, and such counterparts together shall constitute one instrument.

5.10  Further Actions. The parties hereto hereby agree to execute and deliver all such documents and instruments and do all such other reasonable acts and things as may be necessary and appropriate to carry out the provisions of this Agreement.

5.11  Amendment. This Agreement may not be amended except by an instrument in writing signed by the parties hereto.

5.12  Recitals. The recitals set forth hereinabove are incorporated herein by reference.

432

    5.13    <u>Reaffirmation</u>.  Without limiting any defects, defenses or counterclaims Borrower may have relating to matters other than the Subject Transactions, the parties hereto agree that all of the Loan Documents (other than the Mortgage) remain and shall continue in full force and effect, except as expressly modified hereby, and are valid and enforceable, and the Borrower hereby ratifies, affirms and confirms the Loan Documents (other than the Mortgage) and all of its duties and obligations thereunder.

**[Remainder of page intentionally blank; signature page follows.]**

433

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date first above written.

BORROWER:

GEMINI YOUNGSVILLE CROSSING, LLC, a North Carolina limited liability company

By: *Dante A. Massaro*
Name: Dante A. Massaro
Title: Vice President

STATE OF North Carolina

COUNTY OF Mecklenburg

I certify that the following person Dante A. Massaro personally appeared before me this day, acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated as Vice President of GEMINI YOUNGSVILLE CROSSING, LLC, a North Carolina limited liability company, and acknowledged to me that such corporation caused the foregoing instrument to be executed pursuant to its organizational documents.

Witness my hand and official stamp or seal, this the 12 day of ~~October~~ November, 2009.

Notary Seal  [Seal: CHRISTINE PAXSON, NOTARY PUBLIC, GASTON COUNTY, N.C.]

*Christine Paxson*
Notary Public

Print Notary Name: Christine Paxson

My Commission Expires: 11/13/2012

8

434

**LENDER:**

GE BUSINESS FINANCIAL SERVICES, INC., a Delaware corporation (formerly known as Merrill Lynch Capital, a division of Merrill Lynch Business Financial Services Inc.)

By: _[signature]_
Name: Carl G. Jacobson
Title: Duly Authorized Signatory/Authorized Signatory

STATE OF _IL_
COUNTY OF _COOK_

I certify that the following person _Carl Jacobson_ personally appeared before me this day, acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated as _Authorized Signatory_ of GE BUSINESS FINANCIAL SERVICES, INC., a Delaware corporation (formerly known as Merrill Lynch Capital, a division of Merrill Lynch Business Financial Services Inc.), and acknowledged to me that such corporation caused the foregoing instrument to be executed pursuant to its Bylaws or a resolution of its Board of Directors.

Witness my hand and official stamp or seal, this the _12th_ day of November, 2009.

Notary Seal

OFFICIAL SEAL
DOROTHY KAVALIAUSKAS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-14-2010

_[signature]_
Notary Public

Print Notary Name: _Dorothy Kavaliauskas_

My Commission Expires: _8-14-2010_

9

435

## **EXHIBIT A**

LEGAL DESCRIPTION:
McDONALD'S PARCEL

All that certain piece, parcel or tract of land lying, being and situate in the City of Youngsville, Franklin County, North Carolina and being all of Lot 6 as more particularly shown and described as 1.23 acres, more or less on Plat of Property Surveyed For Youngsville Crossing, prepared by Cawthorne, Moss & Panciera, P.A., dated _____ and recorded in Plat Book 2009 at Page 217 in the Franklin County Register of Deeds, reference to which survey is hereby made for a more particular description.

436

## EXHIBIT B

### LEGAL DESCRIPTION:
### RESIDUAL PARCEL

All that certain piece, parcel or tract of land lying, being and situate in the City of Youngsville, Franklin County, North Carolina and being all of Lot 3 as more particularly shown and described as 0.596 acres, more or less on Plat of Property Surveyed For Youngsville Crossing, prepared by Cawthorne, Moss & Panciera, P.A., dated _____ and recorded in Plat Book 2009 at Page 217 in the Franklin County Register of Deeds, reference to which survey is hereby made for a more particular description.

11

437

## EXHIBIT C

[RESERVED]

438

**EXHIBIT D**

Projected Net Proceeds
Youngsville Crossing, Youngsville, NC
Outparcel Sales

| Parcel Sale | Square Feet | Acres | Sale Price ($/s.f.) | Total Sale Price ($) | Commission | Additional Closing Costs | Net Proceeds ($) |
|---|---|---|---|---|---|---|---|
| Outparcel 1* | 84,942 | 1.95 | | | | | |
| Outparcel 2 | 36,155 | 0.83 | 14.50 | 524,245 | 6% | 1% | 487,547 |
| Outparcel 3 (Residual Parcel) | 25,949 | 0.596 | 14.50 | 376,260 | 6% | 1% | 349,921 |
| Outparcel 4 (McDonald's Parcel) | 53,599 | 1.230 | 13.00 | 696,787 | 6% | per the contract | 722,510** |
| Outparcel 5*** | 57,935 | 1.33 | | | | | |
| Outparcel 6 | 60,113 | 1.38 | 12.00 | 721,356 | 6% | 1% | 670,861 |
| Outparcel 7 | 179,032 | 4.11 | 9.00 | 1,611,284 | 6% | 1% | 1,498,493 |

*Outparcel 1 was previously sold to CVS.
**Net Proceeds for sale of Outparcel 4 of $643,202.70 plus use of $79,307.00 "excess" Net Proceeds from the previous sales of Outparcel 1 and Outparcel 5.
***Outparcel 5 was previously sold to First Citizens Bank.

12

439

## EXHIBIT E

### RELEASE PARCELS AND LOT NUMBERS

| Release Parcel | Lot (Plat Book and Page) |
|---|---|
| Outparcel 1 | Lot 1 (MB 2007/54) |
| Outparcel 2 | Lot 2 (MB 2007/54) |
| Outparcel 3 | Lot 3 (MB 2009/217) |
| Outparcel 4 | Lot 6 (MB 2009/217) |
| Outparcel 5 | Lot 4 (MB 2007/200) |
| Outparcel 6 | Lot 7 (MB 2007/200) |
| Outparcel 7 | Lots 8, 9, & 10 (MB 2007/200) |